HOFSTATTER *v.* BONA.

4-7045                                    170 S. W. 2d 1016

Opinion delivered April 26, 1943.

*Oscar H. Winn* and *June P. Wooten,* for appellant.

*Rose, Loughborough, Dobyns & House,* for appellee.

SMITH, J. Emil Hofstatter owned lot 5, block 94, original city of Little Rock at the time of his death. He died testate, and under his will, which was probated April 12, 1905, the property was devised to his wife for her life with the remainder to their sons, Daniel B. and Gordon H. Hofstatter. Subsequently the widow and the son Gordon died, the latter single, intestate and without issue, Daniel B., the surviving son, assumed ownership and control of the property in the latter part of 1932 or the early part of 1933 after the death of his mother. He removed to California, where he died intestate May 12, 1935, single and without issue.

Emil Hofstatter, the ancestor, had two brothers, Frank and William, and one sister, Carrie. The two brothers died, but the sister Carrie survives, and is one of the plaintiffs in this case. The other plaintiffs are the descendants of Emil's brothers, Frank and William, who are all nonresidents of the state except William, son of Frank, who was named for his uncle William, who resides in Little Rock, and has lived there all of his life, a fact well known to Mrs. Wilt. The importance of this fact will later appear.

After Emil Hofstatter's death, his widow married J. A. N. Lindsey, who died in August, 1932, but no children were born to that union. Mrs. Lindsey removed with her sisters, Mrs. Catherine D. Wilt and Mrs. Mensing, to California. Her brother, Andrew Anderson, went to Texas.

Gordon Hofstatter, son and devisee of Emil, died in 1917, single and intestate. His brother, Daniel B., went with Mrs. Lindsey to California. Mrs. Lindsey died in August, 1932.

Emil resided and had a small business house on the lot at the time of his death. After Daniel B.'s removal to California the rents were collected for his account. These amounted to only $25 per month.

Daniel B. failed to pay the general taxes due on the lot in 1933 for the year 1932, and it was sold to the state and, not having been redeemed within the time allowed by law for that purpose, it was certified to the state as

forfeited land on, December 30, 1935. Daniel B. died seven months prior to the date last mentioned.

After Daniel B.'s death, his aunt, Mrs. Wilt, his mother's sister, qualified as administratrix of his estate in California on July 12, 1935, and thereafter the rents were collected for and remitted to her as administratrix.

Mrs. Wilt did not redeem the lot as she might have done, the time for redemption not having expired when Daniel B. died. It is said, however, that she never at any time had funds on hand, as administratrix, sufficient for that purpose.

On September 22, 1936, Sol Thalheimer, Jr., as trustee, purchased the land from the state for the amount of the accrued taxes. Thalheimer conveyed the lot to the Marsh Land Company, of which he was an officer.

Two real estate agencies in Little Rock were advised of the forfeiture and sale of the lot, and they decided to acquire the title, each to assist the other. One undertook to acquire the tax title, the other to acquire the title of the original owners. A purchaser had been found, that person being appellee, who agreed to pay $3,500 cash for the lot, this being a fair price therefor. Appellee proposed to pay this price provided the tax title was acquired and quitclaim deeds were obtained from the heirs of the original owner.

The plan was adopted of having the owner of the tax title convey the land to Mrs. Wilt, the administratrix, who in turn should convey to a sister of one of the real estate agents. This the administratrix did, and she, along with the heirs of Mrs. Lindsey, conveyed to the agent's sister, who, after obtaining these deeds, conveyed to appellee for the consideration of $3,500.

Affidavits were prepared and placed of record, made by the administratrix and by her brother, Andrew Anderson, and by J. F. Theo Wilt, who, as we understand the record, is the husband of the administratrix, the purport and effect of which was to make it appear that the heirs of Mrs. Lindsey had inherited the property from Daniel B. Hofstatter.

These affidavits may have been made in good faith under the apprehension that Mrs. Lindsey had title to the lot which passed to her heirs. Upon the death of Emil's son, Gordon, the fee in remainder passed to his son, Daniel B., subject to the life estate of his mother, the widow of the testator, and it may have been believed that the title passed to Mrs. Lindsey's heirs. But this was not true for the reason that this was an ancestral estate, the title to which came from the father, Emil, and upon the death without issue of the devisees named in Emil's will, who were the testator's direct heirs, the title passed not to the heirs of the widow but to the heirs of the father, and these are the plaintiffs in this case.

These plaintiffs have attacked the tax sale and the deed based thereon, and they prayed the right to redeem therefrom. That relief was denied them, and from that decree is this appeal. After Mrs. Wilt had obtained the deed from the owners of the tax title, for a recited consideration of $854.52, she and the heirs of Mrs. Lindsey conveyed by quitclaim deed to the real estate agent's sister, who in turn conveyed to appellee.

Improvement district taxes were delinquent against this lot for a number of years, and their payment was required to clear the title. Redemptions were made in the name of the Hofstatter estate, the cost thereof being deducted from the purchase money which appellee paid for the lot. Mrs. Wilt made final settlement of her administration of the estate of Daniel B. Hofstatter in the probate court of California, in which she charged herself as administratrix with the net proceeds of this sale amounting to $196.65.

When appellee obtained the deeds to the lot, he immediately entered into possession thereof and has since been in the actual possession thereof, and had had this possession for about four years when this suit was filed.

It was contended in the court below and is urged here that although the tax sale was invalid, a fact which is conceded, appellee's possession of the lot under his tax deed for a period of more than two years gave him title under the provisions of § 8925, Pope's Digest, which reads as follows:

"No action for the recovery of any lands, or for the possession thereof against any person or persons, their heirs and assigns, who may hold such lands by virtue of a purchase thereof at a sale by the collector, or commissioner of state lands, for the nonpayment of taxes, or who may have purchased the same from the state by virtue of any act providing for the sale of lands forfeited to the state for the nonpayment of taxes, or who may hold such land under a donation deed from the state, or who shall have held two years actual adverse possession under a donation certificate from the state, shall be maintained, unless it appears that the plaintiff, his ancestors, predecessors, or grantors, was seized or possessed of the lands in question within two years next before the commencement of such suit or action, and it is hereby intended that the operation of this act shall be retroactive."

It has been held in many cases, a number of which are cited in the briefs of opposing counsel, that this is a statute of limitations which, when applicable, concludes all inquiry into the validity of the tax sale, and the question here presented for decision is the applicability of this statute to the facts of this case.

We think the statute does not apply for the reason that the conveyance of the title based upon the tax sale to the administratrix of the person who owned the lot at the time of the sale operated as and in legal effect constituted a redemption from the sale. Now, it is said, and appears to be true, that the administratrix did not advance the purchase price paid for the lot and did not at any time have sufficient funds on hand belonging to her intestate's estate to redeem. But, even so, the conveyance was to the person who was the administratrix of the original owner, and she could not acquire the title except as trustee for the benefit of the estate. Such was the effect of the deed to her whether that result was intended or not. *Culberhouse* v. *Shirey,* 42 Ark. 25.

All the deeds except that from Mrs. Wilt may be dismissed from our consideration, as these other deeds were from persons who owned no interest in the land and, while their deeds may have constituted color of

title, there had been only about four years possession under them and the title did not ripen through that possession. If appellee has title to the lot, it was acquired by his more than two years possession under the deeds acquired from the owners of the tax title under the provisions of § 8925, Pope's Digest, above quoted.

It is true Mrs. Wilt, the administratrix, did not advance the funds of the estate of her intestate to acquire this tax title, but it is true, also, that this title was conveyed to her, and when this was done a redemption from the tax sale was accomplished and the tax title merged into the legal title. There was, therefore, no tax title which enables appellee to claim under the provisions of § 8925, Pope's Digest. See *Zimmerman* v. *Franklin County S. B. & T. Co.*, 194 Ark. 554, 108 S. W. 2d 1074, and the numerous cases there cited.

Mrs. Wilt did not testify, but the fact is clearly established that she knew that heirs of Emil Hofstatter survived. She had lived in Little Rock in a house opposite the lot here in question. She did not advise any of the Hofstatter heirs that Daniel B. had died, and they were unaware of that fact until appellee made preparations to improve the property.

In her final report as administratrix of Daniel B.'s estate, it was shown that Mrs. Wilt had incurred certain expenses in connection with the redemption of this lot. She had employed counsel in California to assist her in the redemption of the land, and the probate court in that state allowed her credit for the fee she had paid this attorney.

Appellee, through his agents, might have adopted some other method of acquiring the tax title, but we are concerned only with the method which was employed. Appellee proposed to buy the tax title, but upon the condition that deeds be obtained from the owners of the original title, and the method employed was, no doubt, adopted as a means of furthering that end. However, the title was taken in the name of the person who was the administratrix of the estate of the owners of the original title; one who could take title only as a trustee,

and when the title was so taken a redemption was effected. By operation of law the effect of conveying to a person whose duty it was to redeem the land was to redeem it. The tax title was extinguished.

It follows from these views that it was error to dismiss the complaint, and that decree will be reversed and the cause will be remanded for further proceedings not inconsistent with this opinion.